Case No. 25-5256, Hesai Technology Co., Ltd and Hesai, Inc. Appellants v. United States Department of Defense et al. Mr. Theis for the adults and Ms. Michael for the employees. Good morning, and may it please the Court. The primary question on appeal is whether the Department acted contrary to law in finding a NASDAQ-listed automotive supplier, a contributor to the Chinese defense industrial base, without any evidence that it ever gave or supplied anything to the Chinese government or defense sector. Section 1260H required the Department to find that Hesai contributes to the Chinese defense industrial base. All agree that the word contribute means to give or supply. Thus, the ordinary meaning of that phrase, which this Court interprets without deference, means one who gives or supplies materials, services, or support to the Chinese defense industrial base. The Department made no such finding, however, because no such evidence exists. Instead, the Department argues that one can contribute merely by producing goods with substantial military application or benefit alone, even if nothing is ever given or supplied to the Chinese defense industrial base. That argument contradicts the statutory text. Congress targeted contributors, not every manufacturer of high-tech products. Under the Department's interpretation, countless companies, like Volvo, Continental, and Autoliv, all of which reside in the same locations in China and also work on autonomous vehicle technology, qualify as Chinese military companies, too. Because the government does not contend that it can satisfy the give or supply standard that we propose, the Court can vacate the listing decision on that ground alone. The government's failure to comply with Hesai's basic due process rights, we believe, only underscores that vacater is the appropriate remedy. I'm happy to address the Court's questions, but otherwise I can break down some of these arguments at a little more detail. Can I direct you to one which you teed up, which is the government does not argue – I mean, makes a lot of alternative arguments. It doesn't include one at the end that says that you contribute even under your own definition. And maybe you know where I'm going with this, but JA-90, this first national project, it says Hesai worked on a project for the NDRC that involved developing autonomous driving systems for the country's national defense and military industries and so on. So why does that not on its face constitute working with the NDRC, one of the main military industrial planning organs in China, on something related to the, quote, defense and military industries? Well, Your Honor, I'd like to look at that specific page of the record as well, because my understanding, Your Honor, is that these – the references – well, I have several responses to that. I appreciate they haven't argued it. The district court said this was at least evidence of some contribution. Yes, exactly. So to be clear, there are a couple different things going on here. One of them is that the NDRC is the National Development and Reform Commission. They have a lot of obligations in China. The government alleges that one of those obligations involves defense. The project they're referring to, which I believe took place from 2017 to 2020, is not related to anything defense-related. The government does not argue that it is. What they say is that we worked on this project back in 2017 to 2020, and that separately, the NDRC calls for developing autonomous driving systems for the country's national defense. So to be very clear, the project in question was not a defense-related project. The government has not alleged that that project was defense-related. It's also old. As we said, the statute is supposed to be based on the latest information available, not the old information. It's waived. The government didn't actually argue this in their papers. I also think there's a Chenery issue, too, Your Honor. As you pointed out, the district court said that this evidence is in the record as somewhat probative, but it's a Chenery issue because that's not what the agency relied on for the contributions to the defense industrial base. In fact, it's a Chenery problem on steroids because they disclaimed that there was anything else that related to contribute to the defense industrial base other than the Defense I article. So, again, I think at a bare minimum, this would require, I think, they could earn a remand for them to rely on this. With apologies in advance to you and my colleagues, I'm going to ask about another argument no one made. But the government did argue it below, and it's that this contribution part of the statute has no independent meaning. And the key to that concern, which at least makes it much harder than anyone has presented it, is that your argument is that would be surplusage. But your reading is adding words to the statute. You're reading it as though it says a military-civil fusion contributor that contributes to the Chinese defense industrial base. That's not what it says. And when we – usually when we have a defined term, you sort of just plop in the definitions into the defined term in the operative provision of the statute. And when you do that, this provision is entirely unintelligible. I agree. It says things like you reside in a military-civil fusion enterprise zone to the Chinese industrial base. So why shouldn't that be a concern? Because there is a sensible reading of this that is these A through G, at least, tell you what it means to contribute to the defense industrial base. Why isn't that? Other than waiver and all of that. Yes. We certainly have the waiver problem. Adding words to the statute problem is very concerning to me. I take your concern very seriously, Your Honor. I mean, first of all, again, the waiver problem. Party presentation, we would have briefed this case differently if they had argued it differently. Second of all, I agree with you. It makes a hash of the statute to try to say to the defense industrial base, plop that word in. So the idea then is what's the best reading of this provision? And I think for a couple of reasons. Number one, the surplusage problem, which you've identified. But I think the other key reason is that many of those sub factors sort of imply a contribution to the defense industrial base already. For example, obtaining a license for defense production services. Exactly. But that would be the main thing that cuts against you. Agreed, except for there are at least two of those provisions that do not imply at all a defense connection. One of them is residing in a military-civil fusion zone. I think that's key. Residing in a military-civil fusion zone, I think the record shows that in the Zhading zone alone, which is in suburban Shanghai, there's over 2,000 companies, including a number of Fortune 500 companies there. It's an industrial area of town. There's a lot of car manufacturers there, so there's a lot of car. That's why we're talking about Volvo and Continental and Autoliv, VW as well. I think Amazon Web Services is there. So if the reading of the statute is the one that you're proposing, which the government has not raised, but if it is, then necessarily all of those companies are military-civil fusion contributors as well. We don't think that's a tenable reading. We don't think that's what Congress was going for. What's the second sort of unbounded one? Is it H, or did you have another one? I think it's A, Your Honor. I think there's at least those two. I think you can make an argument for others, although many of them have the word defense in them, which, again, I think sort of implies that Congress was focusing more on the defense industrial base. But A is just – oh, no, sorry, not A, B. Entities affiliated with the Chinese Ministry of Industry and Information Technology. The Ministry of Industry and Information Technology, MIIT, is, based on the record, the chief industrial and technology regulator of China. From what I understand, it's a combination of Department of Commerce, our Department of Commerce, SBA, Department of Agriculture, I believe. It's economic regulation. So it regulates high-tech industries, but it also regulates fishing poles and agriculture and consumer technology. So, again, if it's simply – and the government takes the position, in fact, I think the statute says affiliated with means in close formal or informal association. So I think if you don't have the two, the defense industrial-based laws, suddenly there are hundreds of thousands, if not millions, of companies that could be swept in under that. I think the difficulty is that this statute is trying to deal with is this military-civil fusion. I mean, in a way, your answers are saying it can be just civil, just military, or maybe more clearly military. And Congress here was reacting to the approach that is very distinctively followed and increasingly followed in China of not making that kind of distinction and having this really ample crossover between civil developments and military developments. And I think it's precisely so that to the extent that it is in the interest of the Chinese government to obscure the connection, that doesn't prevent Congress from paying attention to industries like your clients that may have implications. I mean, what is, in your view, the purpose of this Section 1260H list? What is your understanding of what Congress was trying to do in enacting this? I mean, I don't strongly disagree with the way you're describing it, Your Honor. They were trying to target companies that, though they have a commercial purpose, are contributing to the Chinese military and the Chinese defense sector more broadly. In fact, that was the definition that the Department of Defense gave below in its summary judgment briefing. It said, the straightforward reading of military-civil fusion contributor to the defense industrial base, and I'm quoting here, demands that an entity must be a contributor to the Chinese military that also has civilian, civil, or commercial purposes. That was in ECF number 23, their summary judgment brief. So I don't disagree with that, but I do think that Congress did this. It didn't just say, because of the nature of civil-military fusion, all high-tech companies in China should be added to a list, because civil-military fusion means that everything high-tech is going to be helping the military. They did it in a particular way. They said, here's what a military-civil fusion contributor is. There's these eight categories. These are the ones that deserve heightened scrutiny. And then it said, which of these companies that reside in these particular places, have these particular licenses, receive particular funding, which of these are actually contributing to the Chinese military, whether that's directly or indirectly, whether that is knowingly or unknowingly, whether it is through a formal contract or through some other means. But I do think it's very critical to give some teeth to the contributes to, as in giving or supplying, because otherwise it's just a list of technology companies. And, in fact, it's not just a list of technology companies. It's a partial list of technology companies. They're adding my client, but they're not adding other companies that are in the exact same situation. But given both the U.S. Congress's interest and the Chinese government's interest, why does it matter whether your client's LIDAR is commercial-grade rather than military-grade? I thought the record reflected that the Chinese military found even commercial-grade LIDAR quite useful for a variety of functions.  Well, if we're talking about the record, it's the Defense One article, I think, was what the Defense Department belatedly relied on. Obviously, that was not mentioned in the decision itself. It was only added during summary judgment briefing. But, yes, that was the case. But I think we'd be in a different situation, Your Honor, if there was evidence of Hisai's technology actually being used in any way by the Chinese military. If our LIDAR was being found in Chinese military vehicles, if even our type of technology was the actual specific technology we developed, there's some record of that, maybe we'd be in a different situation. But that's not what's going on here. They just say anyone who creates a technology with substantial military application or benefit deserves to be on this list. It's contributing. And, again, I think that erases the word contribute from that definition. You're not giving or supplying anything. The dividing line for you is if Hisai is there with very advanced research technology center and is working on this technology that the Chinese government also happens to use, but DOD needs evidence that it is being supplied directly or indirectly, Hisai-specific products to someone in the Chinese government. Either Hisai-specific, yeah, I mean, I think, yes, that is our main position. There just has to be some giving or supplying of our technology or products or services. I mean, that's what contribute means. Again, on brief on page 40 of the government's brief, it says, the ordinary meaning of contribute means to give or supply. And so if our products are being given or supplied, we're not asking for an insurmountable barrier. We're not asking for the government to prove that we knew we were trying to help the Chinese government, that we knew even that we were necessarily contributing to it. But it has to actually be given or supplied for contribute to make any sense. The other angle someone might push back is that we're not arguing actually about the meaning of contribute. We're arguing about what the defense industrial base is, right? So you could be, if the defense industrial base is something which I concede is very broad, like the productive capacity of China's industrial base, which could be called upon by the Chinese defense. And there is this theory that Judge Pillard previewed that basically that is the Chinese government strategy. Powerful technology, at some point it's there, it's available to be used for defense purposes. What's wrong about that? Well, again, Your Honor. I mean, it would be very broad, but it is a coherent, it focuses the dispute on what defense industrial base means. I think there's a few issues with it. Number one, again, exceedingly broad because it would sweep in, I think, undisputedly companies like Volvo and Continental and Autoliv who satisfy all the same criteria. So I think that's one problem with doing it that way. Another one is that the definition that we proposed is from the Congressional Research Service, and it says the organization's facilities and resources that supply, they're talking about the U.S. base, but I'm subbing in the Chinese government, with materials, products, and services for defense purposes. If Congress had wanted to create a list, I keep going back to this, I'm sorry, but they wanted to create a list of Chinese technology companies, there was a way to do it. That's not what they did. They asked for military-civil fusion contributors to the defense industrial base. And if you define it as just anyone who makes high-tech products, then there should be tens of thousands, hundreds of thousands of companies on the list. That's just implausible interpretation, we think, of what Congress was really going after. So in terms of contribute, and, I mean, it's interesting that this case comes to us under, I guess it's E, the presence of your client's facilities in the military-civil fusion enterprise zone. And in terms of how does that contribute to the military-civil industrial base of China, the district court arrived at a definition of those zones as a section of territory established by the Chinese government for the purpose of advancing its policy of military-civil fusion. So, again, I agree, it's pretty nebulous. But the core idea is that these zones, unlike the city of Shanghai, the point of these enterprise zones is that they have distinct regulatory structures, distinct commercial advantages. And if the Chinese government has defined a zone as something that is advancing its military-civil fusion policy, then being there, why is it not a contribution to that military-civil industrial base? Well, a few reasons, Your Honor. I mean, I think, as you say, it's quite nebulous. There's not a list of Chinese military-civil fusion enterprise zones that the department has relied on. Rather, it has identified industrial zones that someone in the Xiaodong zone, a regional official, and in the – or maybe I'm getting backwards, the Chongqing region, in the Xiaodong, it's an industry alliance, which I take to be like a chamber of commerce or something, has touted as advancing military-civil fusion. Xiaodong is a little bit different because it seems like there's also a military-industrial park within Xiaodong region. Within the greater region, there's a smaller part that is specifically focused on the military, but we're not in that part, and they don't suggest that we are. So I think, number one, it's quite nebulous. It's not – I would agree with you it would be different if there were just very established zones, but instead it is very nebulous. It's a strange term. I don't really know what it means. I don't know how you even show that you've established a zone as a military-civil fusion zone when, again, you don't have the central government coming down and saying this. You have regional people or chambers of commerce-type industry alliances. I think it's one thing. The second problem, again, we've talked about it several times, a lot of other companies in those zones. There's 2,000 companies, 500 – Fortune 500 companies. I assume there's coffee shops and laundromats as well. Are they military-civil fusion contributors? I don't know. You have – and I think it's really crucial too, Your Honor, that the government takes the position, and I think the district court recognizes this as well, but this is brief 32, note 4. The government says that this factor rests on residents in the zone and nothing more. So if that is the case, if you're going to accept that definition – and, again, I'm not quite sure how better to read reside, unfortunately. I wish I had some argument for you on that. Then I think it's critical that the word contribution to the defense industrial base gets some teeth because otherwise you are sweeping in potentially thousands of companies, including Fortune 500 companies and others. So I think it all ultimately comes back – I think there are some serious problems with the government's definition of this zone and the substantial evidence that they relied on. But ultimately it seems to me that if you have a – if you actually take the contribution to the defense industrial base seriously, then that's less of a problem because those are just companies to be sort of identified as potential military civil fusion contributors and then you're having – or potential Chinese military companies and then you are using the – to the defense industrial base to actually connect those dots. Switching gears a little bit, I take it HESAI does not have a concrete interest in contracting with the U.S. Department of Defense. We do not contract with the Department of Defense, Your Honor. Or have a concrete or imminent interest in doing so. There's no imminent interest in doing so. And what about pursuing grants, loans, or contracts under the CHIPS Act? It's not in the record, Your Honor. I don't know. I think if it was available to them, then perhaps they would. But it's not in the record. So the liberty interest in support of the due process claim is what? Well, Your Honor, the way we read this court's cases, including the Taylor case, is that there's essentially two requirements, that you have a stigmatizing action by the government and that you have a change in status under law. I think that was also recognized in the NCRI case. It said there was a stigmatizing designation or listing plus the deprivation of a right under state law. I think we have both of those here. We have the stigmatization. That's not in dispute. I'm happy to go into that if you'd like. But the question is, is there a change in status under state law? And what a lot of cases have said, you know, in fact, a quintessential right under state law is the ability to – or under federal law is to bid for government contracts. So I don't think the only response the government has to that, as I understand, is that it's not ripe because we're not currently planning to do it. But I don't think that that's the test. I think the due process claim is currently ripe. We have a change in status under law and stigmatization.  It's just that it's nonsensical to say that you have a constitutional effect of liberty in doing something you've never expressed an interest in doing. Well, we have a constitutionally – the constitutional right that triggers due process – the constitutional right, as far as I understand it in the stigma-plus cases, is the right not to be stigmatized by your government. In the Paul V. Davis case, which is discussing the Constantinople, it says that it was the alteration of Constantinople's legal status, which, combined with the injury resulting from the defamation, justified the invocation of procedural safeguards. And I think in the Constantinople case itself, as we point out, the question there – the deprivation was the inability to buy liquor in liquor stores. But the court didn't say, are you presently intending to buy liquor? Because if not, then you don't have a claim. It said, no, you've been stigmatized, and you had a change in status, and that's enough to invoke this court's – or the Supreme Court's, in that case, but this court's due process precedence. And I think it's just – it's very similar to the NCRI and PMOI cases, where that was a foreign terrorist organization. The court several times held that when there's a stigmatizing action like that, plus the deprivation or a change in status under law, then that's what triggers these projections. And I just don't think that – you know, it seems to me quite on point in this circumstance. I would also point out there's one other thing. It's not in the briefs, but there's actually – at least one state, Utah, actually prohibits us from purchasing property because it basically says that any restricted parties, including Section 1260H companies, are not allowed to purchase property in Utah. And I feel like that's another – I apologize it's not in the briefs, but that's Utah Code Section 63L-13-101 and 201. So I think that's another. One last big picture question on the statutory interpretation, and we don't have a whole lot to go on in terms of what Congress was trying to accomplish. But obviously one of the – perhaps the best argument on your side is that if the government and district court are right, this is incredibly broad. And one just high-level answer to that that I think we would have to embrace if we were going to rule for the government is, yeah, it's extremely broad. And what Congress was doing here was conferring a large amount of discretion on DOD as to who to put on this list. And this is not a criminal statute. It certainly has some tangible consequences. But, you know, it's also not like commerce putting you on a sanctions list and not letting you import your product. So maybe Congress did really want to cast this extremely broad net and say if you are – so the answer to that, if you're making beans in this part of China, then maybe you are a U.S. military company. How do we – can you give us anything to work with to understand why that would be wrong? Well, yeah, a few things, Your Honor. I mean, I think first of all, if that's the case, then that makes the due process concerns even more salient. I think that would give us – you know, it makes it important that we get some process. But I think separately, second of all, it I think then opens the government up to the sort of ACA international line of arbitrariness. If that is the case, if it's truly as broad as they say it is, then there should be thousands or tens of thousands of companies on this list, including other LIDAR manufacturers. There are other LIDAR manufacturers in China who are not on this list as well. So I think if they're going to take such a broad position, then they actually need to put their money where their mouth is and add a whole bunch of companies to this. And that would actually make it less stigmatizing because then it would just be a list of Chinese technology companies. But that's not what they're doing. They're focusing on particular companies. And that's what the ACA international case said. It said essentially a standard is arbitrary when it embraces one potential application but leaves out another seemingly similar one. They're just picking and choosing among all of these companies that meet their own standards and saying that some are Chinese military companies and some are not. And that just seems – that seems incorrect. It seems either their standard is wrong or they're acting arbitrarily. But either way, I think Baikonur should be the right result. If we were to agree with you, and I'm not saying, you know, that we have any opinion formed on that, and we found that there were – there was a lack of procedural due process, could we leave the designations in place and allow a remand? I mean, we did that in NCRI and PMOI. This is a less intense kind of a list. Well, it is less intense now, Your Honor, but every year the list has changed. The consequences have changed. There's been – you know, last year it was denying CHIPS Act funding. Two years ago it was denying the ability to put our products in any products that get sold to DOD, not just direct sales but indirect sales. So every year there's more significant – there's legislation floating to ban companies on the 1260H list from NASDAQ and other publicly – public listing, you know, things. I don't know if it's going anywhere, but the point is that that threat is out there. So I don't think it's – But the consequences in those other cases for the listed entities were much more severe, and we remanded leaving them on the list. Correct, Your Honor. So obviously this court has the discretion to do so. I would urge the court to actually vacate for a few reasons, though. Number one, this case has bounced back and forth between the agency and the district court several times. We've been listed, we've been delisted, and then relisted again. We think the government cut some corners, you know, again, not to personalize it or anything, but just there were some issues with the failure to provide evidence, you know, changing their mind at the 11th hour, having us rebrief everything. We just think this is – even after taking that second chance, they still couldn't get all the evidence in the record. So I think the combination of that kind of procedural history plus the due process, lack of due process here really does counsel in favor of a vacater. Remember that the government has an annual listing process in which they can add companies once a year. And so if we're vacated from the list, the government will have an opportunity either later this year or early next year to re-add us to the list if it feels like it has better information. But in the meantime, we just think that justice requires vacating. We're not inclined to vacate when you started out by indicating it's true. We don't know that we would ever be caught in this net by doing what is prohibited, following contracts or the like. You have no current intention. There's no evidence. I mean, that's precise. It seems to me that's precise in the kind of case where we'd follow what our courts have done in the past. It's not like you're being hurt in any way that you could be hurt if the statute's in vogue because you're not being denied anything if you're not looking for it. Well, Your Honor, we are being harmed in the same way that I think the stigma plus case is recognized, the constant no case.  I mean, when we have cases on the books, I understand that point. We don't want to be stigmatized except we have case law that says, no, we don't vacate in this situation. We want to get it right. I understand that the ordinary course is to vacate. I just urge you to vacate in this circumstance. We've been placed on the list because we make a certain type of technology, not because of a specific concern about our company and what it does, what it has done. So I just think this is a circumstance where obviously this court has discretion to do what it will, but we're being called a Chinese military company that has harmed our stock price, disrupted a factory we were going to build in the United States, canceled contracts. It's been very harmful to the company. There's a reason why we've been fighting this so hard for several years now. It's because the stigma itself, not the idea that we need to get a Defense Department contract, is very painful to our business. And if this court were to say, sorry, you didn't have either due process or, more importantly, you never showed a contribution to the Defense Industrial Base, that would go a long way to restoring our credibility in the world, in the market. And if the government decides to relist us, then we'll fight that one as well. Can I ask, just on that note, there is a statutory requirement to publish this list. Have you given – this is maybe an unfair question, but have you given any thought at this point to what happens if a new designation is published next week or next month and they rely on different grounds? Does this become moot? How do we – if they rely on the same grounds, we would say that's, you know, capable of repetition evading review. But it does seem like something that could disrupt our ability to review this. Yeah, no, it's a totally fair question, Your Honor. I have thought about it. First of all, there has not been a new decision. There was actually a decision briefly published and then retracted the same day. When was that? On February 13th. Unclear why. The Department has not publicly revealed why it published. It does make this sound maybe more imminent of an issue, but we can deal with it when it – It was publicly – so, yeah, of course I would like the opportunity to brief anything if that were to happen, but I don't think it would make it moot regardless. I mean, number one, what the government said in this brief on page 7, note 3, that the amendments to 1260H did not affect the text of the definition of a military civil fusion contributor relevant to this appeal. So we don't think the fact that there's a – there have been amendments to the statute or the fact that there's necessarily a new – the fact that there will be a new listing necessarily affects anything. And even if it were on different grounds, the 1260H still requires a contribution to the defense industrial base. I think there's a number of cases from the circuit. I'll point you to Capital Power Corporation v. FERC, which is a 2025 case, 156F4-644, and it said a case does not moot when a litigant's injury, in fact, stems from two individually sufficient causes and a reversal on one will help you towards – an issue carries through.  That's right. So it certainly wouldn't make it moot. But obviously, if the court had any concerns about that, we'd love the opportunity to brief it if and when that happens. Thank you very much. Good morning, Your Honors. It may please the Court. Urja Mathil for the government. I'd like to take a step back and briefly explain a couple of the baseline findings underlying the agency's decision that illustrate why HISAI falls in the heartland of Section 1260H. And then maybe I'll turn to a couple of the statutory points that Judge Garcia and Judge Pillar raised with respect to the word contributor in the statute. HISAI is a company that makes LIDAR, a technology that uses lasers to create a 3D representation of an object's surroundings. It's used in self-driving navigation systems, for surveillance, for targeting systems, and for situational awareness. HISAI doesn't dispute the PLA's interest in LIDAR that Judge Pillar raised earlier. It doesn't dispute that it's setting up major R&D facilities in at least two of China's military-civil fusion enterprise zones, and that these are areas where government authorities have publicly declared a strategy of supporting private technological development for industrial and military advancement. These are the primary bases for the part of the decision that's unappealed. As to the questions that we were talking about earlier about the statute's use of the word contributor, I think Your Honors are correct that A through G in the statute tell you what it means to contribute, that Congress made a judgment about what counts as a contribution when it defined a military-civil fusion contributor. I think this came up briefly at the last argument involving the statute, and we addressed it briefly in our—we addressed it—the district court addressed it in a slightly different version of the argument where there was a discussion about whether separate findings were necessary for the military-civil fusion contributor part of the statute and to the defense-industrial base part of the statute. And we agree that there is first a decision, a determination, that this company is a military-civil fusion contributor, and then there's a determination about whether that contribution is to the Chinese defense-industrial base, which is, I think, what Your Honors were talking about earlier. That contribution and that prong of the statute, there's a section of the agency's decision that addresses that, and we think that determination, which, again, HISAI doesn't really dispute, suffices to show that HISAI's development of this LIDAR technology contributes to the defense-industrial base. And I think Judge Garcia made the very good point earlier that the question here is whether there's a contribution to the defense-industrial base, and you provide a very nice definition of that, not to the military per se, and that that's a broader term. There's a definition of defense-industrial base in the brief that the district court accepted that HISAI didn't dispute. The definition you provided works just as well. It's a broader term about capabilities and the development of those capabilities that could be marshaled later by the military-industrial complex. But the bottom line of that position is that any company working on technology that the Chinese defense apparatus might be interested in someday, even if that company does everything they can to not share their technology with the Chinese government, is eligible for the list, right? It would depend on that. I think what Your Honor is saying goes to whether the contribution is to the Chinese defense-industrial base, and that is a broad term, as Your Honor has described. It wouldn't suffice to place the company on the list, because to be on the list, you would have to meet one of the eight definitions of being a military-civil-future contributor. You're in one of these zones, which is being interpreted fairly broadly itself. I just think you need to be transparent about that. If you're in this part of China and you're working on any technology that the Chinese government might be interested in someday, you can be on the list. That's the bottom line, right? That's the interpretation of the statutory words for sure. Those are broad words that Congress wrote into the statute. Congress determined that residing in the zone is sufficient to render you a military-civil-fusion contributor, and that's because of the unique characteristics of these zones. We've outlined those in our brief. These zones are zones where public authorities have adopted policies of furthering China's military-civil-fusion strategy. There is record evidence of that. That's relevant. These are not just arbitrary geographic regions. I understand that, and I read your brief to explain that, and I was reading that definition to your friend on the other side. But what about his point, and I think your answer has to be yes, that if the U.S. government wanted to put on this same list the non-technology companies in the zone, that it could do that, and that it hasn't distinguished between other technology companies in the zone and HSI for purposes of why HSI is on the list and the other companies aren't, or other LIDAR companies in the United States. It just feels like there's a real problem of unbounded discretion for the government in using this list. A few responses, Your Honor. First is just sort of I think getting at both what Justice Garcia was getting at earlier and what your question is getting at. The statute does vest some measure of discretion in the Secretary to make these determinations, and I think we're not backing away from that. Subsection A says the Secretary of Defense shall identify each entity the Secretary determines based on the most recent information available is operating directly or indirectly in the United States or any of its territories and possessions, that is a Chinese military company. So there is discretion there in the phrase. Each entity the Secretary determines based on the record that the agency gathers and develops and then presents to this court. So that discretion is there in the statute. Then if you look at when the agency looks at companies like HSI or other companies, it determines whether those companies meet the definition of a Chinese military company, which is fairly articulated in the statute. There are eight various definitions of military-civil fusion contributor. They're all a mouthful to say out loud. The phrase military-civil fusion contributor itself is. Those companies also have to be operating directly or indirectly in the United States or any of its territories and possessions. That's a limitation in subsection A. And then I think the sort of last sort of atmospheric point here is that in the exercise of the Secretary's discretion, you see that it's not unbounded, and you see the sort of ways in which the Secretary exercises that discretion in this record itself. The agency's decision has four bases on which this company was determined to be a military-civil fusion contributor. You don't need to look at all of those other pieces of other determinations to uphold the district court's decision. But that ample evidence here of HSI's ties to the PLA or to the Chinese government sort of confirmed that that discretion was properly exercised in this case, that HSI as a company that's making this LIDAR technology and is residing in this zone is precisely the kind of company that Congress had in mind when it asked the agency to go out and make these determinations and then prepare a report and a list for Congress. And the breadth of the phrase resides in a military-civil fusion enterprise zone definition is, I would say, like a feature of the statute that Congress wrote into it. Congress knew the ordinary meaning of these words. It didn't choose to define them in any more narrow way. It reflects the breadth of Congress's concern with the sort of many ways in which China carries out its military-civil fusion strategy and gave the agency the discretion to make those determinations based on what's going on in China, what kinds of companies are operating, how they're affiliating with the PLA and the Chinese government. It looks like you're suggesting that a contributor is an unbounded notion because discretion is given to the secretary. I mean, discretion can be very limited or it can be bounded or it can be unbounded. And if what my colleague suggested is true, as long as you're in the zone, you're a contributor because someday maybe you will be a contributor. That seems a strange definition, no? I don't think, Your Honor, that it's— As I'm hearing you, you're saying that he has the discretion to make that decision. I'm saying, Your Honor, the agency has the discretion to determine what companies qualify as Chinese military companies. That's not the question. That is the question. That's not how we bound the discretion. We have to have some factors that the secretary would look at. That's right, Your Honor, but for the definition at issue in this appeal, residing in a military-civil fusion enterprise zone is what Congress determined qualifies a company as a military-civil fusion contributor. Congress made a judgment that that is a contribution, and for good reason. I mean, these kinds of zones, as the record shows, and, you know, the department took care to assemble that evidence of how these zones are advancing and publicly announcing that they're advancing this military-civil fusion strategy. So it's not as if there was sort of a cherry-picking off of a list of companies in this zone. There was record evidence assembled of what this company does, of what its technology does, of what the PLA's interest in this technology is, of its presence in these zones, that it chose these zones to site its own facilities in, and then that these zones have announced this partnership with both Hisai and any other companies. And so it is true that Congress wrote the statute in a broad form. I'm not backing away from that. I'm just saying that the way that the secretary then exercised that discretion shows that it's not unbounded, that it did so appropriately in this case. I'm hearing you to say that it's not unbounded because the secretary is limited to those who are in the zone, as the other side argues, but there are many, many, many companies in the zone. There are many companies in the zone. And I'm hearing you to say as long as you're in the zone, there can be no abuse of discretion. That's not what I'm saying, Your Honor. Then I really do need to hear your answer to my colleague's initial question about how, if we do, how we size this down in reviewing what's been done, because that's exactly the position. He can tell me if I misheard him. That's how he was posing it. Essentially, you're in the zone, but no threat whatsoever now. No one can see any threat. You're not doing anything. You make ice cream. That's all. But you're in the zone. And someday, that ice cream may be a problem. And therefore, because you're in the zone, you can be captured. Yes or no? No, Your Honor, because in that case, I think I identified two other features of the statute that limit. It's not just being in the zone. One, you have to be operating directly or indirectly in the United States or any of its territories or possessions. So some of the sort of other hypotheticals would fall outside. And the second is that that contribution has to be to the Chinese defense industrial base. The statute, it's not just being a contributor. There are eight definitions for being a contributor that are set forth in the statute. But that contribution, then, has to be to the Chinese defense industrial base. And I think Judge Garcia pointed out earlier that there's other evidence in the record the district court credited that we reference on pages 37 and 38 of our brief, like these two national projects that Hisai engaged in in partnership with arms of the Chinese military industrial planning apparatus. Did the decision rest on those? I thought that Mr. Tice said no, that has a general problem. That's not what was relied on, that only the Defense One article is really being relied on. The agency's decision does not list those two projects under the subheading of contributions to the Chinese defense industrial base. And this court, just like the district court, could uphold the agency's designation on the basis of only the sent statements that are underneath the subheading contributions to the Chinese defense industrial base. This finding that Hisai doesn't dispute, that PLA uses LIDAR in its development, the Defense One article, the contents of which Hisai doesn't dispute, that's all fine. I'm pointing to these other pieces of the evidence in the record as evidence of how, of other ties to the Chinese defense industrial base. I think it would be proper for this court to look at those. I don't think it would be a general problem because all of this evidence is overlapping because a contribution to the Chinese defense industrial base. All these other pieces of evidence are also aspects of those contributions and sort of, I think we talked about this again at the last argument. But the first part of the statute, military civil effusion contributor, is tied sort of ineluctably to the second part of the statute to the Chinese defense industrial base. And so to the, it's a contribution to the Chinese defense industrial base. And so all of these pieces of evidence that go to whether Hisai is a military civil effusion contributor are relevant and fine for this court to look at. You don't need to in this case. You have enough evidence in sort of even just looking at the rest. But the district court looked at it properly, we think. Can I just go back to Judge Edwards' question? If your statutory interpretation is right, then it does run into this argument from the plaintiff that there might be 100 similar technology companies in the same zone. And you've listed this one. And we do have cases that say you can regulate step by step. But at some point, it becomes apparent that it's that the concern would be that the department is exercising its discretion based on factors no one knows about and aren't in the statute. Why isn't that a concern? You could give remarkably broad discretion and then say, you know, you shall consider the following three or four factors. But the statute just says it doesn't have anything like that to guide the department's discretion. So I think two points, Your Honor. One is I, with respect, think the statute gives quite a lot of guidance to the department about how a military civil effusion contributor is defined and so on. So if they operate in the U.S., they are in some very big area of China, and they work on technology that might benefit the military. And let's just say that they're right, that that includes Volvo, 10 other car companies, and 30 other technology companies, including five other LIDAR companies that aren't on the list. And nobody can tell why this company is on the list and those aren't. So I think if there were hypothetically companies that you could assemble a record that would satisfy all the same elements, it still wouldn't be an arbitrary and capricious claim here. I don't think, one, sort of as an atmospheric point, there's been any evidence of the department exercising its discretion in bad faith, which is what this argument sort of sounds like. Two, I think all the sorts of arbitrary and capricious cases and claims that plaintiff points to here are all cases where an agency made one decision at time A and made another decision at time B, and then the plaintiff at time B went back and said, look, the agency's reasoning, the agency hasn't explained properly and provided adequate reasoning for its departure from time A to time B as between these two companies. But there's no case that plaintiff has pointed to that says an agency has to explain its decision, especially when it's proceeding case by case, as it's allowed to do under this court's precedence and under Bell Aerospace and so on, that the agency has to then compare this company against all other possible companies that might fall within this definition. And I think that's appropriate. That's what it means to allow an agency to proceed case by case, both in expounding the meaning of a statute as it applies it and in administering the statute. And I think sort of one other atmospheric point is it wouldn't necessarily make sense, nor did Congress sort of direct the agency to disclose every company it is assessing and determining which companies fall on this list and which fall outside of it. It would at least be discernible to us why, you know, or that we should be able to surmise why this company and not all those others. And it's very, I mean, there are cases that say, you know, if there's one company is listed and 100 other apparently similar aren't, that's arbitrary and capricious. I think it should be, I appreciate that it should be discernible. And I think the agency decision here sort of makes it discernible. And that's why I was pointing, notwithstanding the breadth, which I'm not contesting of these statutory provisions, to all of the other evidence in the record about the ties to the Chinese government and the PLA. That, I think, explains sort of in a common sense way to the extent there are concerns about these other common sense companies that, again, we don't have a record before us. I don't want to opine on what the agency did or didn't determine with respect to the companies that aren't before this court. But to the extent there's concern about, you know, what happened here and why this company, I think this agency decision is fairly detailed. The administrative record is fairly detailed about why this company, why LIDAR raised particular concerns, why this company's ties to these zones and to the government raised concerns. And that's sort of why I was pointing to the two national projects that Judge Garcia raised, not to say you need to rely on them or to say, like, there's not enough evidence in the record already, but to say, look, there is the evidence here that sort of dispels any sort of, again, concerns about faith. So here's a question I have. It was striking to me that, and I know the statute lists whatever it is, A through G, as each an independent way of being a Chinese military company. But given that there were four different grounds given in the DOD decision here, why wouldn't the defense be and the district court decision be written as, well, at least where all these four, there's some evidence, all these four together were satisfied and we're not going to say whether just being in the zone suffices. It seems like it's putting us in a position to, in a case in which, as you point out, there may be a lot more evidence of a range of different kinds of ties and contributions to Chinese defense capability. It's putting us in a position of taking a relatively nebulous one and saying that alone legally suffices. Could we affirm by rolling together the four bases and saying, you know, we're not going to opine whether the one that the district court relied on suffices, but we think here it does? So I think just two quick points, one on whether this was sort of nebulous. I think, in fact, the text of subsection E is fairly correct, clear, and that's why HSI isn't disputing that it resides in the zone. It's broad and I can understand Your Honor's concern with that. But I think that's why the district court went off only on that. It didn't need to reach the other grounds. And we've asked this court to affirm on that ground because we also think it's fairly straightforward. I think it would be, we would have no objection to this court saying, look, there's all this other evidence in the record of HSI meeting the statutory definition for a military civil fusion contributor. And as a result, it meets the definition under any of the other terms. I think we wouldn't object to that. We explained, I think I was explaining earlier and have explained previously that it's not, we don't think it would be error for this court to look at all of the evidence in the agency's decision because these statutory provisions are overlapping, because the fundamental inquiry of whether the agency properly deemed this company a Chinese military company draws on the same sort of body of evidence. That wouldn't be, we wouldn't object to that. And it would be appropriate for the court to look at those other aspects of the decision if it's so thought to. I think it would be straightforward and easy for the court to look at just the residents in the zone as evidence that the company meets the term military civil fusion contributor. But we don't, we wouldn't object either way. On the due process claim, HSI contends that being designated a Chinese military company causes it to be barred from these various kinds of contracting. And I take it what they're really saying is it is really reputationally harmful. And whether or not they plan to pursue contracts with DOD or contracts under the CHIPS Act, that is a legal disability, indisputably. And that where you have reputational harm and a legal disability, whether or not they plan to seek such contracts, doesn't matter so much as that the investing public, for one, and various other material opportunities are affected in seeing that. So how is that not a deprivation of a liberty interest? It's not, Your Honor. I think, as Your Honor recognized, the reputational harm, the stigma alone is certainly not sufficient. I think HSI concedes that it has to. That's what Paul against Davis says. That's what this court recognized in Taylor. I think to the extent HSI is sort of vaguely gesturing to a plus, it hasn't really specified that there's any plus that's attributable to this designation, this 2025 1260H designation. All of these sort of generalized references to investment and the investor's reaction, none of that's sort of traceable. And I think that's a traceability problem to the 1260H designation. They haven't pointed to any evidence that it was specifically tied to that. And to the extent they're talking about future opportunities. They had a pretty sudden 30% drop in their stock value. Is there a temporal problem with that? I don't recall, Your Honor, if there was any evidence that that was due to the 2025 1260H designation that's being challenged here. I don't think that would be sufficient for giving rise to a protected property interest or liberty interest. I mean, I think they've made an argument, and I'd be interested in any further response you have. But whether they want those contracts or not, it is actually a categorical disability from participating in a certain kind of activity that wouldn't be seen as relevant to their business prospects, whether that's part of their plan or not. And therefore, they meet that definition, and they've been harmed. I think, Your Honor, that, at least to my mind, kind of just comes back to a stigma argument. It's a reputational argument to say that business prospects are being harmed because of this designation. And stigma and reputation alone don't count. If they could point to a specific property interest, I think in the Iran cases, there were specific liberty interests in the ability to not be barred from certain contracts. If they were interested in those contracts, I think that claim as to the contracts to the department. In any case in which the person had to be interested in the contracts that they were barred from, or the jobs, or the opportunity, the profession, or the like. And they aren't interested that that disability is not the kind that counts under reputation plus due process. I think I have two quick points here, Your Honor. One is as to those contracts, I think Your Honor pointed out earlier, they haven't identified any contract that they do intend to pursue. In fact, they seem to disclaim that. I think I don't want to rest entirely on this case, but I'll point to it as a helpful fact pattern in the Atlantic case. The company had identified specific contracts that they had pursued in the past and had intended to pursue in the future with the government. It was at the pleading stage. It's not really on all fours, but that's what the court found sufficient to proceed with the subsequent inquiry. And I think I'll just make a quick point here about that subsequent inquiry. As Your Honor is aware, the due process— I'm sorry, which case? There's a case that the other side cites that we don't cite called Din Atlantic. Din Atlantic? Yes. Oh, Din Atlantic. Yeah, yeah, sorry. Din Atlantic. I apologize. I cite that only for the point that the facts there were meaningfully different and involved the sort of intent to pursue a separate contract. I don't think you need that in the context of due process. I think the point—it's actually much simpler. They simply haven't shown a right claim here or any sort of standing to pursue that due process interest, and so I don't have another case beyond that off the top of my fingertips, but I think that's sufficient, and there are plenty of cases in the ripeness and standing context that would support that that doesn't support a due process claim here when they have no intent of pursuing any contracts with the government. You can't—I think it would be sort of illogical to allow a sort of intent, a nonexistent intent to pursue those contracts to support a constitutional due process claim. As Judge Garcia pointed out, it would be an ill fit. You pursue that claim if you intend to pursue those sorts of contracts, which they haven't expressed any intent to. If your honors have no other questions, I'd ask this court to affirm. All right. Thank you. Thank you. And did counsel reserve time for rebuttal? Two minutes. Okay, we'll hear from you on rebuttal. Thank you very much, Your Honor. I will be brief. I'll make three points. Number one, on the discretion point, because I think that is ultimately what this comes down to, does the Department of Defense have essentially unlimited discretion? And the answer to that has to be no. I think my friend on the other side acknowledged that there's quite a lot of guidance in Section 1260H that requires the defense secretary to list people not based on whatever he feels is a national security threat, but rather he shall identify each entity he determines is a Chinese military company, and then Chinese military company is a defined term. So it is not an open-ended delegation of discretion to list some and not others. It is identify which of these companies are Chinese military companies, and those are defined in a specific way. Otherwise, there's no limiting principle. They can proceed as they go, depending on which companies they feel meet the definition. But that, again, runs right into the ACA international problem. I'd also point out that the agency itself did this in a specific way. It said, here is what we believe is the contribution to the defense industrial base, and here is what we believe makes you a military-civil fusion contributor. So I would think there's a general problem. If you're starting to look outside what the two-step inquiry that they itself relied on, that would be rewriting the agency decision. They also did look at all these four different definitions of being a contributor to the Chinese military-civil fusion contributor. Correct. And why shouldn't we or couldn't we just affirm on that ground? Well, a few reasons, Your Honor. Even if you were to find that one of those military-civil fusion prongs satisfied the definition or made Hisai a military-civil fusion contributor, that still wouldn't solve to the defense industrial base point. Again, the department treated those as two separate inquiries. Another point is that these were heavily, hotly disputed by Hisai Below. The district court relied on the resides in the military-civil fusion zone because that was the easiest one. The other ones had severe problems, such as they accused us of advertising on a procurement platform, and we had evidence in the record saying that that didn't happen. We never did that. So that's why the district court didn't reach those. Obviously, it hasn't been briefed either, so I think at a minimum you'd have to remand on that basis. But I do want to – that gets to my second point, which is that they keep talking about how we don't dispute that LIDAR has these military applications. We don't dispute this. We don't dispute that. This is an entirely one-sided record. The only evidence that we were able to submit to the agency happened before the original – I'm sorry. It happened in response to the original designation before we were given a copy of it. They refused to share the basis of the listing. So we sent a letter saying generally we don't meet any of these categories. We don't even know why we were listed. So that's the record. Everything else in the record is their own material that they have compiled all along. And what the PMOI case says is that to the extent we defer to an agency determination, we do so on the ground that – or on the assumption that they've – that the record is robust and that due process has been provided to the company. So I don't think you can accept the fact that they've made all these findings on a one-sided record and say, well, under substantial evidence review, that's good enough. I mean, this really goes to the heart of the due process problem in this case. I guess the third point I would make, Your Honor, is on this record there's really no dispute that Volvo and others satisfy. We've been saying that below. We've said it on appeal. They've never denied it in their briefing. Again, it's a one-sided record, so we haven't been able to put in records showing exactly their locations and all these things, but it's essentially undisputed for that. And I think it's the definition of arbitrary and capricious agency action to say that you both meet the definition, but we're going to add one of you and not the other. I think that is a – you know, they – I think it's crucial as well that they, in their contribution to the defense industrial base section, they say that the military civil – I'm sorry. The PLA uses LIDAR in its development of autonomous vehicles, comma, which can have military applications. So they don't even say that LIDAR specifically has military applications. They say autonomous vehicles do. And to me, that opens up a range of companies. It's not just LIDAR. They didn't point to LIDAR specifically. They say autonomous vehicles are used by the military. And I think that's crucial because, again, it just makes this completely open-ended. It's not something special about LIDAR specifically. The very final point – I know I promised three, but just the due process point, Your Honor. We've pointed – reply brief, page 30, note 4, among other places. We've pointed to all the specific legal status changes that we have. We think it has to be the case that the stigma plus means we don't need to separately show we were going to pursue a specific context because otherwise I'm not sure what the stigma plus framework even means. Even what work it's doing. If we wanted a specific contract and they were denying it to us, we wouldn't need to show reputational harm. We would just go in and say we wanted to pursue this contract, but you denied it. So, you know, make sure – please let us – you know, you denied us due process by not letting us do so. I think the whole point of the stigma plus is that, you know, you can't just show reputational harm alone. You have to show something more. And that's the change in legal status. I'm sorry. You said that you weren't provided with the basis of the decision, but the decision is in the record. The basis is spelled out. It may not be – I mean, it obviously isn't satisfying to you, but they do say what they rested on. Yeah, just to be very clear. So, we were placed on the list, I believe, in January 2024. We asked the department for the basis of our listing. They refused. We then submitted a letter saying here are all the reasons why we couldn't satisfy any of the factors. They did not provide a substantive response. We then sued them. After we sued them, we got a copy of the administrative record. So, at that point, we learned the basis of the decision. Then we litigated fully through full summary judgment briefing. Three weeks before the argument, they said, by the way, we're going to come up with a new decision, so let's postpone this hearing. They retracted their original designation, which only listed one ground for military civil fusion contributor, which was affiliation with the MIIT, the chief industrial regulator. Then, in their amended designation, apparently they scoured the Internet and found three additional grounds, and that's why we're here today. At no point, though, was there ever a process by which we could supplement the record, why we could give additional information, we could show why their information was wrong. And that's what I'm talking about in terms of the kind of procedural irregularities here. And, in fact, the chief evidence they relied on is an article that we got after we had filed our second summary judgment motion. They said, oh, by the way, here's the key evidence. At the argument, the government said essentially that was the only evidence that they had on the contribution to the defense industrial base. So, they've also disclaimed the other three grounds as contributions, I think, below. And, again, under this Court's ordinary procedures, that should be enough to say that can't be an affirmance on those grounds. We ask the Court to vacate. Thank you very much for your time. Thank you. The case is submitted.
judges: Pillard; Garcia; Edwards